**FILED**

SEP 1 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Mazin Salih Al-Harbi,
    **Detainee,**
    **Guantanamo Bay Naval Station**
    **Guantanamo Bay, Cuba;**

*Petitioner/Plaintiff,*

v.

**GEORGE W. BUSH,**
    **President of the United States**
    **The White House**
    **1600 Pennsylvania Ave., N.W.**
    **Washington, D.C. 20500;**

**DONALD RUMSFELD,**
    **Secretary, United States**
    **Department of Defense**
    **1000 Defense Pentagon**
    **Washington, D.C. 20301-1000;**

**ARMY BRIG. GEN. JAY HOOD,**
    **Commander, Joint Task Force - GTMO**
    **JTF-GTMO**
    **APO AE 09360; and**

**ARMY COL. MIKE BUMGARNER,**
    **Commander, Joint Detention**
      **Operations Group - JTF-GTMO,**
    **JTF-GTMO**
    **APO AE 09360,**

*Respondents/Defendants.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## PETITION FOR WRIT
## OF HABEAS CORPUS

No. _____

CASE NUMBER  1:05CV01857

JUDGE: Colleen Kollar-Kotelly

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 09/19/2005

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Mazin Salih Al-Harbi seeks the Writ of Habeas Corpus. A citizen of Saudi Arabia, he brings this petition by his undersigned counsel. Petitioner is a civilian, wrongly classified as an "enemy combatant" by the President of the United States. He is being held virtually *incommunicado* in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Mazin Salih Al-Harbi or to establish in this Court a lawful basis for Petitioner's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the November 13 Executive Order, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of the detained Petitioner at Guantánamo.

## I.
## JURISDICTION

1.    Petitioner brings this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioner further invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, and 1651, and 5 U.S.C. § 702; Articles I and II of, and the Fifth and Sixth Amendments to, the United States

Constitution. Because he seeks declaratory relief, Petitioner also relies on 28 U.S.C. 2201, 2202 and Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas Corpus under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II. PARTIES

3.    Petitioner is a foreign national who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control.

4.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner is being detained allegedly pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner's unlawful detention and is sued in his official capacity.

5.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been

charged with the responsibility of maintaining the custody and control of Petitioner. He is sued in his official capacity.

6.    Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner and is sued in his official capacity.

7.    Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner is presently held. He is the immediate custodian responsible for Petitioner's detention and is sued in his official capacity.

8.    Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantanamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### STATEMENT OF FACTS

9.    Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

10.    Petitioner is not, nor has he ever been, an enemy combatant who was part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there. Moreover, Petitioner has not engaged in nor plotted any acts of aggression against the United States.

11.    At the time of his seizure and detention, Petitioner was not a member of the Taliban Government's armed forces or Al Qaeda. He did not cause or attempt to cause any harm to American personnel or property. He remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

12.    Petitioner has not been afforded access to any tribunal, nor charged with nor convicted of any wrongdoing, yet he has been detained for over two years, in a territory over which the United States exercises exclusive jurisdiction and control.

13.    Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

14.    Petitioner is not a citizen of a country at war with the United States. On the contrary, he is a citizen of Saudi Arabia, an ally of the United States.

### The Joint Resolution

15.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan. On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution 23, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Jan. 18, 2001) ("Joint Resolution").

16.    Petitioner did not participate in the armed conflict at any point in time. He is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the Joint Resolution.

17.    Upon information and belief, Petitioner is not, and has never been, a member of

Al Qaeda or any other terrorist group, and has not committed any violent act against any

American person or espouse any violent act against any American person or property. He had no

involvement, direct or indirect, in the terrorist attacks on the United States on September 11,

2001, or any act of international terrorism attributed by the United States to Al Qaeda or any

other terrorist group. He is not properly subject to the detention order issued by President Bush.

Because he did not participate in the armed conflict at any point in time, he is not properly

subject to President Bush's authority as Commander-in-Chief or under the laws and usages of

war.

### The Executive Order

18.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing

Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

   i.    is or was a member of the organization known as al Qaeda;
   ii.    has engaged in, aided or abetted, or conspired to commit, acts of international
         terrorism, or acts in preparation therefor, that have caused, threaten to cause, or
         have as their aim to cause, injury to or adverse effects on the United States, its
         citizens, national security, foreign policy, or economy; or
   iii.   has knowingly harbored one or more individuals described in subparagraphs (i)
         and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush

must make this determination in writing. The Executive Order was neither authorized

nor directed by Congress, and is beyond the scope of the Joint Resolution of September

18, 2001.

19.    The Executive Order purports to vest President Bush with the sole discretion to

identify individuals who fall within its purview. It establishes no standards governing the

exercise of his discretion. Once a person has been detained, the Executive Order contains no

provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes indefinite and unreviewable detention, based on nothing more than the President Bush's written determination that an individual is subject to its terms.

20.     The Executive Order was promulgated in the United States and in this judicial district. The decision to incarcerate Petitioner was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner was, and is, being made by Respondents in the United States and in this judicial district.

21.     President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner is subject to the Executive Order.

22.     Petitioner is not properly subject to the Executive Order.

23.     Petitioner has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Petitioner was not arrested or detained by the United States in the course of an armed conflict. Petitioner is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

24.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

25.    Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *Rasul v. Bush*, 542 U.S. __, 124 S.Ct. 2686, 2698 (June 28, 2004).

26.    By at least March 17, 2005, the precise date being unknown to counsel, but known to Respondents, the United States military transferred Petitioner to Guantánamo, where he has been held ever since, in the custody and control of Respondents.

### Rendition

27.    Upon information and belief, during interrogations, detainees have also been threatened with rendition or transfer to countries that routinely practice torture. Upon information and belief, the United States has secretly transferred detainees to such countries without complying with the applicable legal requirements for extradition. This practice, known as "rendition" or "extraordinary rendition," is used to facilitate interrogation by subjecting detainees to torture. *See* Jane Mayer, "Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, *The New Yorker*, Feb. 14, 2005, at 106.

28.    The U.S. government's practice of rendition has been well documented by various major American and international news organizations, including, *inter alia*, the

*Washington Post, The Los Angeles Times,* and the British Broadcasting Corporation (the

"BBC"). According to new accounts,

> Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source. The suspects have been taken
> to countries, . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources
> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, "U.S. Behind Secret Transfer of Terror Suspects," *Wash.*

*Post,* Mar. 11, 2002, at A1; *see also* Dana Priest, "Long Term Plan Sought for Terror Suspects,"

*Wash. Post,* Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements

between the United States and other countries, such as Egypt, that agree to have local security

services hold certain suspects in their facilities for interrogation by CIA and foreign liaison

officers.").

## IV.                  CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

29.        Petitioner incorporates by reference all preceding paragraphs as if set forth

fully herein.

30.    By the actions described above, Respondents, acting under color of law, have

violated and continue to violate common law principles of due process as well the Due Process

Clause of the Fifth Amendment to the Constitution of the United States. President Bush has

ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of

law, and the remaining Respondents have implemented those orders. Respondents' actions deny

Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by, *inter alia*, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

31.     To the extent that Petitioner's detention purports to be authorized by the Executive Order, that Order violates the Fifth Amendment on its face and as applied to Petitioner.

32.   Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### SECOND CLAIM FOR RELIEF
### (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

33.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

34.   By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

35.   Accordingly, Petitioner is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

### THIRD CLAIM FOR RELIEF
### (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

36.   Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

37.    By the actions described above, Respondents, acting under color of law, have

denied and continue to deny Petitioner the process accorded to persons seized and detained by

the United States military in times of armed conflict as established by specific provisions of the

Third and Fourth Geneva Conventions.

38.    Violations of the Geneva Conventions are direct treaty violations, are violations

of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241

(c)(3).

39.    Respondents are liable for this conduct described above, insofar as they set the

conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or

conspired to violate the Geneva Conventions.

40.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as

well as any other relief the court may deem appropriate.

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

41.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully

herein.

42.    By the actions described above, Respondents have denied and continue to deny

Petitioner the due process accorded to persons seized and detained by the United States military

in times of armed conflict as establish by customary international humanitarian and human rights

law as reflected, expressed, and defined in multilateral treaties and other international

instruments and domestic judicial decisions, and other authorities.

43.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as

well as any other relief the court may deem appropriate.

## FIFTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE -
## ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

44.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

45.    The acts described herein constitute arbitrary arrest and detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

46.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

47.    As a result of Respondents' unlawful conduct, Petitioner has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SIXTH CLAIM FOR RELIEF
## (ARTICLE II OF THE UNITED STATES CONSTITUTION-
## UNLAWFUL DETENTION)

48.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

49.    Petitioner is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.  The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." *Hamdi v. Rumsfeld*, 124 S.Ct. 2633, 2642 n.1 (2004).

50.    By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo.  All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner.

51.    The military seizure and detention of Petitioner by the Respondents is *ultra vires* and illegal because it violates Article II of the United States Constitution.  To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is *ultra vires* and void on its face and as applied to Petitioner.

52.    To the extent that Respondents assert that their authority to detain Petitioner derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of

the U.S. Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

53.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL
DETENTION)

54.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

55.    Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. *See, e.g.*, Army Reg. 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

56.    By arbitrarily and capriciously detaining Petitioner in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

57.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

EIGHTH CLAIM FOR RELIEF
(VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE
PROCESS )

58.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

59.    By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

60.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

61.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

62.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

63.    Accordingly, Petitioner is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

64.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

65.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the

Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

66.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- RENDITION)

67.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

68.     Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

69.     Accordingly, Petitioner is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners pray for relief as follows:

1.     Grant the Writ of Habeas Corpus and order Respondent to release Petitioner from his current unlawful detention;

2.     Order that Petitioner be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

3.      Order that Petitioner cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

4.      Order that Petitioner cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture

5.      Order Respondents to allow counsel to meet and confer with Petitioner, in private and unmonitored attorney-client conversations;

6.      Order Respondents to cease all interrogations of Petitioner, direct or indirect, while this litigation is pending;

7.      Order and declare the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the U.S. Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and customary international law;

8.      Order and declare that the prolonged, indefinite, and restrictive detention of Petitioner without due process is arbitrary and unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and customary international humanitarian law; and

9.      Grant such other relief as the Court may deem necessary and appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and international law.

Dated: September 15, 2005

Respectfully submitted,

Jeffrey J. Davis
Moore and Van Allen PLLC
100 North Tryon Street
47th Floor
Charlotte NC 28202-4002
(704) 331-1037
(704) 378-2037 (Fax)
(704) 661-5244 (Cell)
jeffdavis@mvalaw.com
North Carolina Bar No. 6582

George Daly
139 Altondale Avenue
Charlotte NC 28207
(704) 333-5196
gdaly1@bellsouth.net
North Carolina Bar No. 1071

OF COUNSEL:

Tina Monshipour Foster (TF5556)
Gitanjali Gutierrez (GG1234) & Barbara Olshansky (BO0057)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner certify, pursuant to L. Cv. R. 83.2(g), that they are representing

Petitioner without compensation.

Dated: September 15/ 2005

Respectfully submitted,

Jeffrey J. Davis
Moore and Van Allen PLLC
100 North Tryon Street
47th Floor
Charlotte NC 28202-4002
(704) 331-1037
(704) 378-2037 (Fax)
(704) 661-5244 (Cell)
jeffdavis@mvalaw.com
North Carolina Bar No. 6582

George Daly
139 Altondale Avenue
Charlotte NC 28207
(704) 333-5196
gdaly1@bellsouth.net
North Carolina Bar No. 1071

CHAR2\834789v1