IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MAZIN SALIH AL-HARBI,**<br> Petitioners/Plaintiff,<br><br>v.<br><br>**GEORGE W. BUSH,** *et. al.,*<br> Respondents/Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 1:05-CV-1857-CKK<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

  Petitioner Abu Abdul Rauf Zalita, in response to Respondents' Motion to Dismiss[1], respectfully requests that this Court (i) deny Respondents' Motion to Dismiss, and hold this action in abeyance pending Petitioner's exhaustion of his remedies in the Court of Appeals under the Detainee Treatment Act of 2005[2] ("DTA") and the filing in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*[3] ("*Boumediene I*"), or (ii) in the event that it determines it lacks jurisdiction over the action, transfer this habeas action to the Court of Appeals pursuant to 28 U.S.C. § 1631 for consolidation with Petitioner's DTA action (to be filed shortly hereafter).

  Respondents argue that dismissal of this action is consistent with the established law of this Circuit as well as the clear intent of Congress. Respondents fail to recognize that the

---

[1] Petitioner's Motion to Dismiss, filed 4-19-07 (Dkt. No. 50) ("Motion to Dismiss")

[2] Pub. L. No. 109-148, 119 Stat. 2680

[3] 476 F. 3d 1981 (D.C. Cir. 2007)

1

constitutionality of the Military Commissions Act of 2006[4] ("MCA") is still in dispute and being actively litigated. In the Supreme Court's denial of certiorari in *Boumediene*[5], three Justices stated in their dissent that the habeas-stripping provision of the MCA is a "significant [question]…warranting…review"[6]. Two more Justices stated that they could not review the issue "at this time"[7] because Petitioners had failed to exhaust alternative remedies[8] In other words, five Justices have signaled a willingness to rehear the issues raised in *Boumediene I* once alternative remedies have been exhausted.

     This is far from a case of first impression for the courts. In a prior case, the Supreme Court held that in habeas actions where alternative remedies exist, and where there is a danger of dismissal of the underlying habeas action by statute while those remedies are being exhausted, the original court of the pleading would be abusing its discretion were it *not* to stay dismissal pending abeyance of said exhaustion of remedies, provided there is good cause, potentially meritorious claims, and the absence of unreasonable delay. (Need Citation).

     Respondents would have this court believe that it has no choice but to apply the holding in *Boumediene I* to this habeas action. But this court is not bound by the decision *Boumediene I*; this court has the discretion to stay this action while the jurisdictional issues continue to be litigated. Respondents argue that this court has no jurisdiction to hear Petitioner's habeas action.

---

[4] Pub. L. No. 109-366, 120 Stat. 2600 (2006).

[5] ____ U.S. _____, 127 S. Ct. 1478 (2007).

[6] *Id.,* Dissent at 4.

[7] *Id.,* Concurrence at 1.

[8] It is the contention of habeas counsel that the alternative provided under the DTA falls short of the standard required under *INS v. St. Cyr,* 533 U.S. 289 (2001) to lawfully suspend habeas corpus.

2

It is well established that courts have jurisdiction to determine their own jurisdiction. Nor has the Court of Appeals even issued its mandate in *Boumediene I*. The *Boumediene* petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*. The court has not yet acted on the motion.

While questions of jurisdiction are being decided, as they are here, the court in question still has the authority to issue orders maintaining the status quo of the petition. In fact, two of the Justices in the denial of certiorari in *Boumediene* specifically charged the courts with preventing any actions by Respondents that would damage Petitioners' ability to exhaust their remedies under the DTA.[9] Dismissal of this case could void the Amended Protective Order issued in this case as well as other orders and rulings regarding access to clients. Negotiating a new protective order that provides the same levels of access to clients and protection of the attorney-client privilege could takes weeks or longer, ultimately delaying if not outright preventing counsel from being able to file a fair and accurate petition for review under the DTA. For this reason this court should issue a stay-and-abey order, rather than dismiss this habeas action, while the DTA petition is being litigated.

In the alternative, should this Court determine that it does not have jurisdiction over these habeas claims, Petitioner requests that the underlying motion be transferred to the Court of Appeals pursuant to 28 U.S.C. § 1631, for consolidation with his DTA petition (to be filed shortly hereafter).

---

[9] The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" ____ U.S. _____, 127 S. Ct. 1478 (2007) (Concurrence at 1).

3

## 1. It Would Be Premature For This Court to Dismiss Petitioner's Habeas Action for Lack of Jurisdiction.

Respondents argue that dismissal of this habeas action is consistent with the established law of this Circuit (*Boumediene I*) as well as the clear intent of Congress as expressed within the MCA.[10]  This argument fails to recognize that the holding in *Boumediene I* is neither final nor binding upon this court.  Moreover, the constitutionality of the statute is still being litigated.  As a matter of necessary predicate, the Supreme Court has openly invited habeas counsel to exhaust all available remedies in order to repetition the Court for review.  Dismissal at this time would be premature.  Until the constitutionality of the MCA has been resolved, it is more appropriate to maintain the stay of these habeas actions.

### A.  *Boumediene I* Is Not Binding Upon This Court.

The Court of Appeals has not issued its mandate in *Boumediene I*.  The *Boumediene* petitioners have asked the court to stay the issuance of its mandate pending the completion of DTA proceedings and the filing of a renewed petition for certiorari to review the court's jurisdictional ruling in *Boumediene I*.  The court has not yet acted on the motion.

Moreover, this Court is not obligated to rotely apply the Court of Appeals' conclusions regarding the jurisdictional implications of the MCA.  It has long been held that courts have jurisdiction to determine their own jurisdiction.  This type of threshold jurisdictional determination, which must be made in each case based on its own facts, is precisely what the Supreme Court did in

---

[10] "Petitioners' motions seek relief that is contrary both to the law of the Circuit that these cases should be dismissed for want of jurisdiction, and to the clear intent of Congress, expressed in the MCA, to withdraw District Court jurisdiction over the detainees' habeas cases." Motion to Dismiss at 1.

4

*Ex parte Milligan,* 71 U.S. 2 (1866). In discussing the authority of the courts to address Milligan's claims that a writ of habeas corpus should issue notwithstanding action that suspended the writ, the Supreme Court stated:

> The suspension of the privilege of the writ of habeas corpus does not suspend the writ itself. The writ issues as a matter of course; and on the return made to it the court decides whether the party applying is denied the right of proceeding any further with it.

71 U. S. at 131. The Court then went on to consider whether the facts showed "that Milligan was a prisoner of war, and, therefore, excluded from the privileges of the statute." *Id.* The Court concluded that Milligan was not a prisoner of war and not covered by the suspension statute; therefore, the Court granted the writ. *Id.* Similarly, *in Duncan v. Kahanamoku,* 327 U.S. 304 (1946), the Court took jurisdiction and determined that the petitioner did not fall within the class of people to whom the Hawaiian martial law declaration applied. *See also United States v. Villato,* 2 U.S. (Dall.) 370 (C.C. D. Pa. 1797) (where prisoner had not been naturalized, writ granted to free him from treason charge). Nothing precludes this Court from conducting its own investigation into the jurisdictional issues involved in Petitioners' claims.

### B. The Constitutionality of the MCA Is Currently Being Litigated.

Respondents argue that the law of the circuit is settled, but this is premised upon an incorrect interpretation of *Boumediene I*. While the Court of Appeals based its decision in *Boumediene I* upon its reading of the MCA, the constitutionality of the MCA itself is still in dispute. On February 20, 2007, a split panel of the Court of Appeals decided combined cases involving aliens imprisoned at Guantánamo Bay and held that post-*Rasul* statutes deprived courts of jurisdiction over the habeas actions brought by petitioners in those cases.[11] The *Boumediene* petitioners filed a petition for writ of certiorari and, on April 2, 2007, the

---

[11] *Boumediene I* at 981.

5

Supreme Court denied certiorari, with both a three-Justice dissent and a statement respecting the denial of certiorari.[12] In their concurrence, however, Justices Kennedy and Stevens held that, given the Court's "practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "*at this time*." (emphasis added)[13] It therefore appears that five Justices will give serious consideration to a renewed petition for certiorari seeking review of the decision in *Boumediene I*, following petitioners' exhaustion of their DTA remedies. A majority of the Supreme Court, in other words, has left open the possibility that the Court of Appeals' holding is erroneous and that the petitioners have the right to pursue habeas relief in the district courts.

While Respondents dismiss this process as a "speculative chain of events,"[14] in reality this process is well underway. Two Supreme Court Justices have expressly invited an exhaustion of remedies, and the Court of Appeals singled out a failure to exhaust remedies as a reason for the dismissal of the petition of the *Boumediene* petitioners. There is nothing "speculative" about this; both holdings cited by Respondents as authorities for their motion to dismiss have implied that their holdings may have been decided differently had petitioners exercised this alternative option. Until that option has been exhausted by scores of other habeas cases (including this one), *Boumediene I* should be treated for what it is – the first in a series of many decisions involving distinct allegations and legal theories that may be taken into consideration, but are not binding upon any of the district courts. *See Texas v. Cobb,* 532 U.S.

---

[12] *Boumediene v. Bush,* 127 S.Ct. 1478 (2007).

[13] 127 S. Ct. 1478, Concurrence at 1.

[14] Motion to Dismiss, at 5.

6

162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker,* 543 U.S. 220, 239-242 (2005) (limiting *stare decisis* effect of cases where constitutional issue was not raised or resolved).

**2. The Court Has the Discretion to Issue a Stay-and-Abey Order, and Such an Order Is Mandated Where a Procedural Bar May Prevent Future Habeas Review.**

Staying this action is consistent with Supreme Court directives in the analogous situation when a federal court is presented with unexhausted habeas claims under 28 U.S.C. § 2254. In *Rhines v. Weber*[15], the Supreme Court explicitly approved the stay-and-abey procedure requested here by Petitioners in the context of federal habeas corpus proceedings. The Court held that district courts have the discretion to issue stay-and-abey orders in lieu of dismissal where alternate remedies have yet to be explored in certain habeas actions. Moreover, where there is i) just cause, ii) no intent to delay on the part of the petitioners, and iii) a likelihood of success, it would be an abuse of discretion for the court *not* to issue a stay-and-abey order.

**A.  The District Court Has Discretion to Enter a Stay.**

In *Rhines*, the prisoner filed in federal court a mixed habeas petition, one containing both claims exhausted through the state court system and unexhausted claims. The Court recited its precedent in *Rose v. Lundy*[16], in which it imposed a requirement of "total exhaustion" with respect to mixed petitions and, on that basis, had directed the federal courts to dismiss mixed

---

[15] *Rhines v. Weber*, 544 U.S. 269 (2005).

[16] 455 U.S. 509 (1982)

7

petitions without prejudice and instructed affected petitioners to present their unresolved claims in state court.[17]

Yet the *Rhines* Court observed that, at the time of *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions, which meant that petitioners could return to federal court following exhaustion of their state claims "with relative ease."[18] Congress' enactment of a limitations period for federal habeas petitions after the *Lundy* decision meant that the petitioner's federal habeas claim could become procedurally barred, as the petitioner pursued unexhausted state claims following a dismissal without prejudice by federal court. Recognizing that problem, the *Rhines* Court allowed for district courts to issue stay-and-abey orders at their discretion.

As discussed above, this case and other pending habeas actions by Guantánamo prisoners now pending in this Court involve a genuine prospect of further Supreme Court review to decide the federal courts' jurisdiction in their cases. Petitioner's right to proceed by seeking a writ of habeas corpus, to the extent the Supreme Court may decide that right exists, could be impaired if this Court to dismisses his petition now. In this way, the situation is comparable to *Rhines*, where it was possible (yet not certain) that an otherwise valid federal habeas claim could be barred as a result of pursuing unexhausted claims in another forum.

**B. It Would Be an Abuse of Discretion For This Court *Not* to Issue an Order to Stay-and-Abey, Pursuant to *Rhines*.**

Respondents attempt to minimize the significance of *Rhines* by stating that the Guantánamo habeas cases, unlike *Rhines*, do not involve "any temporal bar to a habeas petition,"

---

[17] *Id.* at 522.

[18] 544 U.S. at 275.

8

and the "authority of a court to enter a stay is constrained by statute."[19] However, Respondents fail to note that the constitutionality of the operative statute in *Rhines* (the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) was not being actively litigated as part of the habeas petition, as it is here. In fact, in the absence of intentional dilatory tactics by the petitioner, the *Rhines* Court went on to hold that "it would likely be an abuse of discretion to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious.[20] Petitioner in the present case satisfies all three preconditions – good cause, no deliberate delay, and potentially meritorious claims – under which failure to stay-and-abey would constitute an abuse of discretion.

First, there is good cause for the failure to exhaust. Where the petitioner in *Rhines* at least had the ability to pursue both modes of relief at the outset of his case, the potential remedy in Petitioner's case did not exist until years after his habeas corpus petition was filed and did not purport to provide the habeas relief to which Petitioner was entitled at the time the habeas action was filed. The questions left open in the Supreme Court's decision in *Rasul v. Bush*,[21] which established a right to proceed under § 2241 at the time Petitioner submitted his documents, and the subsequent DTA and MCA, have resulted in major complexities that left the legal landscape opaque. The Court of Appeals required several rounds of briefing over two years before it could issue its decision in February 2007. Respondents argue that Petitioner could have pursued this petition any time since the enactment of the DTA[22]; however, it should be noted that as of the

---

[19] Motion to Dismiss at 7.

[20] *Rhines*, 544 at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005).

[21] 542 U.S. 466 (2004).

[22] Motion to Dismiss at 7.

9

*Hamdan* decision[23], Petitioner, whose case was filed well before the enactment of the DTA, had no reason to believe that his habeas petition would be dismissed and that an alternative remedy would be necessary. Petitioner thus had excellent reasons for not initiating the DTA procedures until the denial of certiorari in *Boumediene*.

Second, Petitioner has done nothing to deliberately delay this case. Counsel filed Petitioners' petition for habeas corpus relief on September 19, 2005, and on October 19, 2005,this case was stayed and has remained in abeyance ever since.

Respondents argue that Petitioner has no statutory right to have his case abeyed as he exhausts alternative remedies.[24] Again, Respondents misinterpret the holding in *Rhines*. By testing whether the DTA petition to the Court of Appeals provides an adequate substitute for their habeas proceedings in this court, Petitioners are challenging the constitutionality of the very statute Respondents are citing as the basis for dismissing said proceedings. Not only is abeyance within this court's discretion, but given the good cause for delay, absence of dilatory tactics, and potentially meritorious claims, it would be an abuse of that discretion not to issue a stay-and-abey order.

**3. Maintaining the Status Quo Is Necessary, As Dismissal Would Irreparably Harm Petitioner in Contravention of the Express Instruction of the Supreme Court.**

In denying certiorari in *Boumediene*, Justices Kennedy and Stevens expressly charged courts, including this one, with a watchdog role. In the event that the government were to "take additional steps to prejudice the position of petitioners in seeking review in this court," courts were tasked with "[acting] promptly to ensure that the office and purposes of the writ of

---

[23] Hamdan v. Rumsfeld, ____U.S. ____, 126 S. Ct. 2749 (2006).

[24] Motion to Dismiss at 6.

10

habeas corpus are not compromised."[25]  In their Motion to Dismiss, Respondents seek to have this court dismiss the Amended Protective Order and all other access-related orders currently in place in this habeas proceeding and establish a brand-new set of procedures at the Court of Appeals level.  Such actions could cause irreparable damage to Petitioner's ability to exhaust his alternative remedies.  Were the new protective order proposed by Respondents in *Bismullah* implemented, it would have a chilling effect upon the attorney-client relationship, in that communications from counsel would no longer be privileged, but subject to screening and redaction by the Department of Defense.[26]  In addition, counsel would be limited to three visits with their client, after which they would presumably be cut off from ever seeing their client again.  Negotiating a new protective order that ensured protection of attorney-client privilege and access to Petitioner could drag on for months; meanwhile, in the absence of a protective order, Respondents could deny counsel all access to their client.  While jurisdictional issues are being settled, it is within the discretion of this court to maintain the status quo with respect to the protective order and counsel access procedures to ensure that communications between counsel and their client are not summarily terminated by a statute whose constitutionality is in the process of being litigated.

**A.  Court Has the Discretion To Issue Orders Maintaining the Status Quo Pending Resolution of Jurisdictional Issues.**

---

[25] 127 S. Ct. 1478, Concurrence at 1.

[26] *Bismullah v. Rumsfeld*,  No. 06-1197, United States Court of Appeals for the District of Columbia Circuit, Proposed Protective Order, p. 36 ("Documents marked 'legal mail' by counsel shall be subject to content review and security and contraband screening by the DoD Privilege Team."), p. 37 ("Counsel will be notified with respect to legal mail that, upon review, will be redacted or screened out.")

There is a long-established principle that, where the question of jurisdiction is still being settled, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers,* 330 U.S. at 291 (quoting *United States v. Shipp,* 203 U.S. 563, 573 (1906) (Holmes, J.)); *see also Kircher v. Putnam Funds Trust,* 126 S.Ct. 2145, 2155 (2006) (a federal court's adjudicatory authority includes "its authority to determine its own jurisdiction"). This Circuit has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition ...." ... Clearly there was "power to preserve existing conditions while ... determining [the] authority to grant injunctive relief."

*In re President and Directors of Georgetown College,* 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers).*

The District Courts have recognized that, regardless of the ultimate resolution of jurisdictional questions, the courts are authorized to enter orders necessary to the ultimate litigation. For example, Judge Leon, who found the rights of the prisoners extremely limited in scope, entered an order on the merits of Respondents' motion for filter team review of attorney-client material, denying the request (*Boumediene v. Bush,* 450, F.Supp.2d 25 (D.D.C. 2006); Judge Robertson granted the same request on the merits in *Hicks v. Bush,* 452 F.Supp.2d 88 (2006). Additionally, counsel in most of the Guantánamo prisoner litigation have been operating under the protective order first authorized by the District Courts in *Al Odah* for almost two years.

**B. Maintaining the Status Quo is Necessary to Prevent Irreparable Harm to Petitioner's Claims.**

12

This Court has the discretion to enter a stay as it sees fit, and maintaining the status quo is necessary here in order to prevent irreparable harm. This court should carefully protect the status quo by maintaining the orders entered to date to assure that Petitioner is not prejudiced in his ability to litigate the DTA action as well as to preserve potential remedies before this court. Maintenance of the Protective Order, and the client access provided therein, is absolutely critical for effectively exhausting Petitioner's remedies under the DTA. Without the Protective Order in place, there is no legal mail channel; there is no privileged communication between attorney and client; base visits would be curtailed or eliminated; and counsel may be forced to destroy the classified documents currently in their position that have shed the only insight to date upon the factual bases for Petitioner's detention. Absent the protections of the Protective Order, counsel will be unable to provide the Court of Appeals with sufficient factual information to make a balanced and informed decision regarding the merits of their DTA Petition.

Also, Respondents have signaled their intent to dramatically restrict prisoners' access to counsel, proposing a protective order at the Court of Appeals level that would, among other things, require all legal mail from counsel to Petitioners to be first screened and redacted by Department of Defense employees. Secondly, counsel would be restricted to three visits with their clients. It is unclear whether counsel who have already visited their clients three times would be permanently barred from ever visiting their clients again. Third, Department of Defense officials would have unilateral authority to decide whether to permit counsel to see the evidence used to justify a detainee's enemy combatant designation.

Counsel for Guantanamo prisoners have labored under extraordinary circumstances to cultivate relationships with their clients. Counsel have had to overcome the government's

13

attempts to bar them completely, well-documented instances of anti-Semitic statements designed to drive wedges between the detainees and their counsel, and onerous hurdles for traveling to the base. The proposed protective order is a naked attempt by the government to impede prisoners from challenging the factual bases for their detention and return to a pre-*Rasul* state of the world.

Maintenance of the status quo is critical to foreclosing Respondents from prejudicing Petitioner's ability to litigate – at the District Court or Circuit Court level – these issues. In the event the case is remanded, or if the DTA procedures prove an inadequate substitute for constitutionally-required habeas corpus procedures, this Court should be in position to proceed immediately on the issues raised. Petitioner has waited years to enjoy the promise of *Rasul*, and should be spared any further delays that would ensue were it necessary to negotiate a brand new set of protective orders and access procedures.

## 4. In the Event This Court Determines It Lacks Jurisdiction, Petitioner's Case Should Be Transferred to the Court of Appeals Pursuant to 28 U.S.C. 1631.

If the Court nevertheless finds that it lacks jurisdiction to hear this case and declines to enter a stay, it should transfer the habeas action to the Court of Appeals for consolidation with Petitioners' DTA petitions (to be filed). The transfer statute provides in relevant part:

> Whenever a civil action is filed in a court…or appeal…is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631. As described above, it is in the interest of justice for this Court to ensure that the current Protective Order remains in place, thus maintaining counsel's unbroken access to evidence needed to prepare the DTA petition, as well as affording Petitioner an

14

opportunity to participate in the preparation of their DTA submissions, pending the Court of Appeals' decision on how to govern these proceedings.[27] It is also in the interest of justice to preserve the status quo, where the Court of Appeals has jurisdiction over the same general subject matters, and must consider issues of client access and the scope of merits review, but has not yet had the opportunity to act. Under the circumstances, including the uncertain and shifting scope of federal court jurisdiction, this Court (at a minimum) should ensure that there is no gap in governing procedures until the Court of Appeals can fully consider these matters in *Bismullah* and *Parhat*.

**Conclusion**

For the foregoing reasons, this Court should deny Respondents' Motion to Dismiss and enter an order preserving the status quo by continuing its stay of litigation going to the merits of the pending petition for a writ of habeas corpus and holding such litigation in abeyance pending the outcome of the Petitioners' DTA petitions.

Dated May 2, 2007.

Respectfully submitted,

Counsel for Petitioner:

---

[27] The Government has taken the position both in the Court of Appeals and in this Court that the detainees' habeas corpus cases should be transferred pursuant to 28 U.S.C. § 1631, and has cited legislative history of the DTA that it suggests supports such transfer. *E.g., Al Odah v United States*, Nos. 05-5064, 05-5095 through 05-5116, Nos. 05-5062, 05-5063, Reply of Federal Parties Addressing the Detainee Treatment Act of 2005, at 28-31 (D.C. Cir. Mar. 17, 2006) (citing comments of Senator Graham, *inter alia*); *Hamdan v. Rumsfeld*, Civil Action No. 1:04-cv-01519-JR, Respondents' Reply in Support of Motion to Dismiss, at 45 n. 24 (D.D.C. Dec. 8, 2006).

<div style="margin-left: 50%;">

_____
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

- and -

George Daly (Pursuant to LCvR 83.2(g))
139 Altondale Avenue
Charlotte, North Carolina 28207
Tel: (704) 333-5196
NC Bar No. 1071

- and -

Jeffrey J. Davis (Pursuant to LCvR 83.2(g))
400 N. Church Street #222
Charlotte, NC 28202
Tel: (704) 661-5244
Fax: (888) 350-0980
NC Bar No. 6582

</div>